IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Scott A. Group, | Case No. 4:13 CV 1636 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Norm Robinson, *Warden*, | |
| Respondent. | |

## INTRODUCTION

This Court previously denied Petitioner Scott Group's Petition for Writ of Habeas Corpus (Doc. 54). Group now moves under Federal Civil Rule 59(e) to alter or amend its judgment (Doc. 56). He bases his Motion on "new evidence" in the form of a report by attorney Christine Funk (*see* Doc. 57-2). Funk's report also forms the basis for Group's simultaneous attempt to amend his dismissed Petition to add a Ninth Ground for Relief (Doc. 57). Group supplements both Motions with the Declaration of Dr. Dan Krane (Doc. 66). The Warden opposes (Docs. 59, 63), and Group replies (Docs. 61, 65).

## BACKGROUND

This Court previously set out the facts and procedural history of Group's case (*see* Doc. 54 at 1–12). In brief, Group was convicted and sentenced to death for the murder of Robert Lozier and the attempted murder of Sandra Lozier. Group, who worked for the Ohio Wine Imports Company, made weekly deliveries to the Loziers' bar. Group shot Robert and Sandra in the head; Sandra survived and identified Group as the assailant. *State v. Group*, 98 Ohio St. 3d 248, 249–53 (2002).

Group filed a Notice of Intention to initiate this habeas action in July 2013 (Doc. 1). He filed the Petition in May 2014 (Doc. 16), asserting seven Grounds for Relief. In September 2015, this Court granted Group's Motion to add an Eighth Ground for Relief (Doc. 50). This Court denied the Petition in January 2016 (Doc. 54).

## STANDARD OF REVIEW

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). "A motion under Rule 59(e) is not an opportunity to re-argue a case. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation omitted).

Federal Civil Rule 15, "made applicable to habeas proceedings by [28 U.S.C.] § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with 'leave of court' any time during a proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Given the strictures of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner may only amend his petition after the one-year statute of limitations if the new claims share a "common core of operative facts" with the original claims. *Id.* at 659 (internal quotation marks omitted). A post-judgment motion is not considered a second or successive habeas petition "if the district court has not lost jurisdiction of the original habeas petition to the court of appeals, and there is still time to appeal." *Moreland v. Robinson*, 813 F.3d 315, 324 (6th Cir. 2016).

Though leave to amend is freely given when justice so requires, denial is appropriate in the event of undue delay, dilatory tactics, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "And while Rule 15 plainly embodies a liberal amendment policy, in the post-judgment setting [a court] must

also take into consideration the competing interest of protecting the finality of judgments. Thus, in the post-judgment context, [a court] must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment." *La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

Group bases his Motions on reports from attorney Christine Funk and DNA scientist Dr. Dan Krane (*see* Docs. 56-1, 66). Funk finalized her report on January 30, 2016 (Doc. 56 at 5), ten days after this Court entered judgment. Dr. Krane completed his report on April 12, 2016 (Doc. 66-1 at 3). This Court addresses each Motion in turn, acknowledging the significant overlap between the two.

**Motion to Alter or Amend Judgment**

Group seeks relief from this Court's judgment denying his Third and Eighth Grounds for Relief, which alleged trial counsel were constitutionally deficient in their handling of DNA evidence and related expert testimony. He specifically complains counsel failed to: (1) present an expert to testify regarding DNA blood evidence found on the shoes Group wore when he voluntarily surrendered to police; (2) adequately cross-examine the State's DNA expert; and (3) sufficiently investigate their chosen DNA expert's availability and willingness to testify, while promising the jury it would hear testimony from a DNA expert. This Court concluded the Ohio Supreme Court and the Ohio court of appeals reasonably rejected these claims on the merits (*see* Doc. 54 at 20–28).

Group relies on Funk's report as "newly discovered evidence" requiring this Court to rethink its earlier decision (Doc. 56 at 4–5). Funk is an attorney with significant experience "defending people charged with felonies in which DNA evidence was presented by the prosecution" (*id.* at 4). She has

3

consulted on DNA cases around the country since 1999, and Group argues she is "well-qualified to give an expert opinion as to the professional reasonableness of trial counsels' actions" (*id.* at 5). "Funk considered relevant portions of the trial record as well as habeas pleadings and exhibits pertaining to the Third and Eighth Grounds for Relief" (*id.* at 5). In short, Funk opines that, in her estimation, trial counsel was ineffective for the reasons alleged in Group's claims.

The problem with Group calling Funk's report "newly discovered evidence" is that it is not new, is not newly discovered, and is not evidence. It is not new because, as the Warden argues, Group presented a similar affidavit to the state courts during post-conviction review (*see* Doc. 21-4 at 92–116). It is not "newly discovered" because, although Group has been advancing these claims for years before the state courts and "Funk has been dedicated to DNA [consulting] since 1999 on a wide scale, . . . a report was not filed with this Court until twenty-eight days after its decision" (Doc. 59 at 5). "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Group's explanation that it was only his more recent Eighth Ground that prompted him to reach out to Funk does not convince this Court that Funk's services were "unavailable" -- particularly as the Eighth Ground was, in Group's words, "connected to core facts in the original petition" (Doc. 61 at 9). Further, Group never alerted this Court that he intended to seek Funk's input, even after seeking leave to add his Eighth Ground.

Moreover, Funk's report is not evidence, but rather notarized legal argument. "[T]he reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof. Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); *see also Lynch v.*

4

*Hudson*, 2009 WL 483325, at *18 (S.D. Ohio 2009) (rejecting attorney affidavit as "notarized argument" and collecting Ohio cases holding the same).

Group also relies on Dr. Krane's report, although it is not addressed in the pleadings because it was filed after briefing was complete (*see* Doc. 66). Like Funk, Krane reviewed the trial record and DNA evidence (Doc. 66-1 at 1). He opines "it is scientifically inappropriate to say that to 'a reasonable degree of scientific certainty' a specific person is the source to the exclusion of all others of an evidentiary DNA sample," and suggests the testing could not rule out the presence of another individual's DNA in the sample (*id.* at 2–3). But as with Funk, Group fails to show why this evidence was unavailable or to adequately explain why he did not engage Krane's services (or even alert this Court of his intention to do so) prior to judgment.

Even setting these considerable problems aside, nothing in the reports require this Court to disturb the Ohio courts well-reasoned decisions. For example, even if trial counsel were "not blind-sided" by Baird's decision not to testify (Doc. 56 at 21), Funk's opinion cannot overcome the deference owed the state courts given "the absence of any guidance from the Supreme Court as to how hard an attorney must work to find an expert." *Davis v. Carpenter*, 798 F.3d 468, 474 (6th Cir. 2015). So too with Funk's Monday-morning quarterbacking of counsel's cross-examination and alleged failures to object to the prosecutor's presentation of the DNA evidence (*see, e.g.*, Doc. 56-1 at 6–7, 10–11).

More importantly, the reports in no way undermine the state court conclusion that any errors were not prejudicial in light of the "overwhelmingly persuasive" evidence of Group's guilt. *State v. Group*, 2011-Ohio-6422, at ¶ 88 (Ct. App.). Indeed, try as he might to recast DNA as having been the focal point of his criminal trial, Group simply cannot overcome the "constellation of both direct and circumstantial evidence pointing convincingly and powerfully to" his guilt, which includes "Mrs.

5

Lozier's eyewitness identification of Group, which was reliable considering that Group, as her wine deliveryman, was no stranger to her; . . . the fact that, while in prison, Group tried to enlist several others to falsify evidence and to eliminate or intimidate Mrs. Lozier; and the fact that the box of Ohio Wine invoices was missing from the Downtown Bar after the shootings." *Id.*

**Motion to Amend Habeas Petition**

Group seeks to use the same reports to add a Ninth Ground for Relief. In the vein of his Third and Eighth Grounds, Group aims to advance the theory that counsel's constitutionally infirm investigation left them unprepared to challenge the prosecutor's presentation of the DNA evidence. Specifically, Group criticizes counsel for not objecting to the "prosecutor's fallacy," a common gambit whereby a prosecutor equates the random match probability to the probability that the defendant or victim was not the source of the DNA sample (Doc. 57-1 at 2–3). Group acknowledges he has not raised this claim in state court and requests a stay while he exhausts this claim.

The would-be Ninth Ground is too little too late. First, Group's new claim is untimely. The proposed claim treads on much of the same territory as Group's Third and Eighth Grounds for Relief, yet he did not seek to include it in his Petition at any point prior to judgment. Even accepting that state post-conviction counsel erred in not presenting this claim, the prosecutor's treatment of the DNA evidence is hardly news to federal habeas counsel. Group's explanation that this new claim was "identified" only by Funk's report is therefore unconvincing (Doc. 57 at 3).

Second, Group's new claim is procedurally defaulted. "When a petitioner has failed to present the grounds to the state courts and no state remedy remains available, his grounds are procedurally defaulted." *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Group argues state forums are still open to him, because Ohio always allows

6

a petitioner to file a second or successive post-conviction petition. *See* OHIO REV. CODE § 2953.23. He cites in support a factually distinguishable decision from this District, *Wesson v. Jenkins*, 2015 WL 731872 (N.D. Ohio 2015). As Wesson's petition included both exhausted and unexhausted claims, he moved to stay the case while he exhausted all claims in state court. Wesson moved to stay only two months after filing his petition, before a ruling on the merits, and only after "alerting the Court to the possibility of filing unexhausted claims following habeas counsel's investigation." *Id.* at *1. In other words, *Wesson* has no bearing on the facts at hand, where this Court has already ruled on the Petition, which was pending for eighteen months, without a hint of this new claim despite the fact that it relies on facts long known to Group.

True, the Supreme Court has stressed the importance of comity in allowing state courts to have the first "crack" at a petitioner's claims. *See, e.g.*, *O'Sullivan*, 526 U.S. at 845–48. But it has balanced comity with finality: "Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Group's proposed course of action -- adding an unexhausted claim based on previously available facts *after* the disposition of his federal habeas petition -- undermines AEDPA's finality concerns and invites dilatory tactics by failing to provide any intelligible stopping point for a petitioner wishing to add new, unexhausted claims to a recently denied petition. *See id.* at 278 ("[I]f a petitioner engages in . . . intentional delay, the district court should not grant him a stay at all.").

Third, Group's proposed Ninth Ground is meritless. *See id.* at 277 ("[E]ven if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."). Even if counsel were ineffective for failing to challenge the prosecution's presentation of the DNA evidence, Group has not shown a reasonable probability that counsel's alleged mishandling of the DNA evidence affected the jury's verdict in a case where the surviving victim attempted to scrawl "Ohio Wines" on the wall in her own blood and later identified Group, her regular Ohio Wines delivery man, as the assailant. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Group cannot add a ninth claim at the eleventh hour.

## CONCLUSION

This Court has, and continues to treat this case seriously. But Group has not shown either that this Court erred in denying the Petition, or that he is entitled to revive the Petition to add a meritless, unexhausted claim based on previously available facts. The Motions (Docs. 56–57) are denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

May 27, 2016